UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: CONSTANCE MAY BLAIR,  No. 15-11084

Debtor.

## MEMORANDUM OPINION

Before the Court is the motion for relief from the automatic stay (the "Motion") filed by Horst and Lilo Apfel, Co-Trusteees of the Horst and Lilo Apfel Qualified Domestic Revocable Truste U/T/A/D 12-31-12 (hereinafter, "Apfels"). *See* Docket No. 10. Apfels seek relief from the automatic stay to continue a prepetition eviction proceeding against their tenant, Constance May Blair. The Court held a hearing on the Motion on July 7, 2015 at 11:00 a.m and took the matter under advisement. After considering the Motion, the parties' arguments, and applicable law, the Court finds that cause exists to modify the automatic stay as requested.

FINDINGS OF FACT

The operative facts in this contested matter are not in dispute. Ms. Blair and Apfels entered into a lease agreement (the "Lease") pre-petition. Pursuant to the lease, Ms. Blair rented residential real property from Apfels located in Santa Fe, New Mexico (the "Property"). Apfels filed a petition for restitution and eviction in the First Judicial District Court of New Mexico (the "State Court"), Case No. D-101-CV-2015-01207 (the "Eviction Proceeding") earlier this year.

Ms. Blair filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 28, 2015 (the "Petition Date"). Ms. Blair's bankruptcy case is administered by a Chapter 7 trustee (the "Trustee"). The deadline contained in 11 U.S.C. § 365(d)(1)[1] for the Trustee to assume or

---

[1] All statutory references in this opinion are to the Bankruptcy Code, codified in Title 11 of the United States Code.

reject the Lease was June 27, 2015. The Trustee did not assume or reject the Lease. Ms. Blair has not yet been granted a discharge, nor has she waived her discharge of any debt owed to Apfels.

Apfels assert Ms. Blair defaulted under the Lease and they are entitled to evict her, both because she failed to pay rent and because the Lease was rejected by operation of the Bankruptcy Code. They assert the Lease terminated before the Petition Date and that the automatic stay should therefore be modified to allow them to pursue the Eviction Proceeding in State Court. Ms. Blair disagrees. She argues, among other things, that she was entitled to a rent abatement at the time of non-payment. She also claims she has equity in the Lease because she believes the rental rate is below market value.

## DISCUSSION

The issue before the Court has implications that affect many consumer Chapter 7 debtors who lease their residence. It is not atypical for an individual who leases her residence to file a Chapter 7 case, and for the Chapter 7 trustee to allow the lease to be rejected by operation of the Bankruptcy Code by not timely assuming it. The landlord then asserts, as the Apfels asserted at the stay relief hearing, that even if the tenant is in compliance with all lease terms, the rejection of the lease is a material breach permitting the landlord to evict the tenant. A landlord may be so motivated if the rent is below market.

Apfels assert the Lease was terminated before Ms. Blair filed her bankruptcy case following a material default resulting from nonpayment. However, Apfels intend to assert in the Eviction Proceeding, in the alternative, that even if Ms. Blair is not in default under the Lease due to a rent abatement or for other reasons, they are entitled to evict her because the Lease has been rejected in the bankruptcy case.

2

Before applying factors relevant to whether the Court should modify the automatic stay, the Court will address the effect of rejection of the Lease in this Chapter 7 case. That is an issue of bankruptcy law within the specialized expertise of this Court.

## I. Rejection and Default

Section 365(d)(1) governs the assumption or rejection of an unexpired lease of residential real property in a Chapter 7 case. It provides that if the Chapter 7 trustee does not assume or reject such a lease within 60 days after the order for relief, or within such additional time the Court fixes within specified limitations, then the lease is deemed rejected. Rejection of an unexpired lease in a Chapter 7 case constitutes a breach of the lease as of the date immediately preceding the petition date. 11 U.S.C. § 365(g)(1); *In re Stoltz,* 315 F.3d 80, 86 n. 1 (2nd Cir. 2002) (noting that as a legal fiction, "[a] rejected lease is treated as if the debtor breached it immediately prior to the petition date, … and the parties are generally left with the rights and remedies available outside of bankruptcy law"). However, the rejection itself does not terminate the lease. *In re Diomed, Inc.,* 394 B.R. 260, 268 (Bankr. D.Mass. 2008) (Rejection "does not cause a contract to magically vanish. Rather, the [d]ebtor's rejection of the lease of the [p]roperty constitutes a breach of the lease as of the petition date.") (quoting *In re The Ground Round, Inc.*, 335 B.R. 253, 261 (1st Cir. BAP 2005), *aff'd* 482 F.3d 15 (1st Cir.2007)).

The Bankruptcy Code provides a more flexible approach with respect to leases of residential real property than nonresidential (*i.e.* commercial) real property. If a lease of commercial property is deemed rejected, the trustee is required to immediately surrender such property to the lessor. 11 U.S.C. § 365(d)(4). There is no similar statutory requirement for leases of residential real property, meaning that a tenant is not required to surrender her home to the landlord upon rejection.

3

Few cases have addressed whether a breach stemming from the failure to assume an unexpired lease within the 60-day period is material or technical.  At least one bankruptcy court characterized such breach as technical because it is insufficient to terminate the lease.  *See In re Park,* 275 B.R. 253, 256 (Bankr. E.D.Va. 2002) (suggesting that the breach caused by failing to assume a lease within the statutory period is "technical or anticipatory").  Another court looked to the lease provisions and state law to resolve the question.  *See In re Kmart Corp.,* 290 B.R. 601, 607 (Bankr. N.D.Ill. 2002).  ("[A]fter rejection, the contractual provisions of the leases and applicable state law determine whether the leases are executory and enforceable, whether the debtor's breach is a 'material' one, and what rights and remedies are available to the lessor and sublessee.").

A handful of courts have observed that a breach stemming from rejection is material without articulating any specific rationale.  *See Stewart Title Guar. Co. v. Old Republic Nat. Title Ins. Co.,* 83 F.3d 735, 741 (5th Cir. 1996) ("[R]ejection of an executory contract or lease constitutes a material breach."); *In re S & A Restaurant Corp.*, 2010 WL 3619779, *10 (Bankr. E.D.Tex. 2010) (observing that "rejection of an executory contract or unexpired lease constitutes a material breach"); *In re IMG Healthcare, LLC*, 2008 WL 2695638, *2 (Bankr. E.D.La. 2008) (same). One bankruptcy court provided a reasoned basis for that conclusion, explaining:

> Since the breach caused by rejection excuses the lessee from performance of his [or her] personal obligations under a lease, such breach is material and should likewise give the lessor a right to recover its property to mitigate a potential future dischargeable debt.

*In re Beck*, 272 B.R. 112, 124 n. 19 (Bankr. E.d.Pa. 2002).

This Court agrees with the reasoning of *Beck*.  A deemed rejection of a lease is material if and when the tenant is relieved of personal liability for obligations under the rejected lease.  In Chapter 7, debtors are relieved of their obligations under a rejected lease of nonresidential real

4

property if the debt arising from those obligations is discharged in the bankruptcy case. In such event, the breach stemming from the deemed rejection becomes a material breach because it significantly alters the bargain between the landlord and the tenant. However, if - notwithstanding rejection - the debt is never discharged, then the landlord suffers no injury and will not be deprived of the benefit of its bargain. In such case, the breach would be technical. *Cf* Restatement 2d Contracts, § 241 (addressing when a failure to render performance under a contract is material).

Here, the Chapter 7 Trustee did not assume the Lease by June 27, 2015; accordingly, it was rejected by operation of § 365(d)(1). The Lease was not terminated as a result of such rejection, but Ms. Blair is deemed to have breached the Lease as of April 27, 2015 - the day immediately preceding the Petition Date. As of right now, the breach stemming from the deemed rejection is a technical breach because none of Ms. Blair's obligations under the Lease have been discharged.[2] The breach resulting from rejection will be material if Ms. Blair is relieved of any obligations under the Lease at the time she is granted a bankruptcy discharge. Ms. Blair can prevent the deemed rejection from being a material breach by executing a knowing and voluntarily waiver of the discharge of any obligations under the Lease and obtaining Bankruptcy Court approval of the waiver before she is granted a discharge.[3] To accomplish this, Ms. Blair would need to file a motion in this Court pursuant to 11 U.S.C. § 727(a)(10) and obtain Bankruptcy Court approval of her partial waiver of the discharge before her discharge is granted.[4] That section provides a mechanism to voluntarily waive the discharge of debts.

---

[2] If the breach is not a material breach, it would be an immaterial or technical breach. *See Famiglietta v. Ivie–Miller Enters., Inc.,* 126 N.M. 69, 966 P.2d 777 (Ct.App. 1998) (discussing in detail when a breach is or is not material).

[3] The waiver must be approved before Ms. Blair is granted a discharge because upon entry of the discharge, her obligations under the Lease are discharged and the breach becomes material.

[4] The waiver is partial because it would apply only to obligations under the Lease, not to all debts.

5

*Lichtenstein v. Barbanel,* 2005 WL 3479656 (6th Cir. 2005) (A debtor may seek to waive their discharge with respect to a single debt pursuant to § 727(a)(10)).[5]  If an effective waiver is timely made, Ms. Blair would not be relieved of any obligations under the Lease and Apfels would not suffer an injury or be deprived of the benefit of their bargain as a result of the deemed rejection.

The Court notes that even if Ms. Blair were to waive the discharge as it relates to the Lease, she does not have an absolute right to resist eviction.  Apfels would still be entitled to all of their rights and remedies under applicable state law.  For example, if the State Court were to find that Apfels validly terminated the Lease prior to commencement of this bankruptcy case in accordance with applicable state law, or that Apfels are entitled to terminate the Lease for nonpayment of rent, Apfels would have the rights and remedies flowing therefrom.  If Ms. Blair had waived her discharge with respect to her obligations under the Lease, she would have no bankruptcy protection from any damages that may be awarded.  In that event, the material-technical distinction for deemed rejections would be academic.  *See In re Park,* 275 B.R. 253, 256 (Bankr. E.D.Va. 2002) (pointing out that "in the vast majority of cases, the trustee's … breach of an unexpired lease []by failing to assume it within the statutory period[] will be accompanied by an actual breach in the form of nonpayment of rent.").

---

[5] Some courts have held that § 727(a)(10) can only be used to waive a discharge *in toto* rather than the discharge of a single debt.  Those courts conclude that the proper way to waive the discharge of a single debt is to enter into a reaffirming agreement with the creditor pursuant to 11 U.S.C. § 524(c).  *See, e.g., In re Leiter,* 109 B.R. 922, 926 (Bankr.N.D.Ind. 1990) ("A distinction must be drawn between a waiver of discharge under section 727(a)(10) and a reaffirmation or exception of a specific debt from discharge. The waiver under section 727(a)(10) is a waiver of any discharge at all.") (internal quotations omitted); *accord 6 Collier on Bankruptcy* ¶ 727.12, p. 727-55 to 56 (16th ed. 2013).  For the reasons explained in *Lichtenstein,* this Court is of the view that § 727(a)(10) allows debtors to make partial waivers of the discharge that apply only to one or more specified debts, provided they file an appropriate motion and obtain Court approval of the waiver.

6

Case 15-11084-j7    Doc 17    Filed 07/16/15    Entered 07/16/15 10:14:30 Page 6 of 9

## II. Stay Relief

The Court will now turn to whether the automatic stay should be modified to allow Apfels to pursue state law remedies against Ms. Blair. That issue is governed by 11 U.S.C. § 362(d), which allows the Court to grant a party relief from the automatic stay for "cause." "Cause" for relief from the automatic stay under § 362 "is a discretionary determination made on a case-by-case basis." *In re Carbaugh,* 278 B.R. 512, 525 (10th Cir. BAP 2002) (citing *Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir. 1987)).

When a party requests relief from the automatic stay to continue a pre-petition action against the debtor in a non-bankruptcy forum, relevant factors to the Court's determination of "cause" include: (1) whether the relief would result in a partial or complete resolution of the issues; (2) the lack of any connection or interference with the bankruptcy case; (3) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (4) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee, and other interested parties; (5) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; and (6) the impact of the stay on the parties and the "balance of the hurt." *In re Curtis,* 40 B.R. 795, 799-800 (Bankr.D.Utah 1984).[6] *See also In re Busch,* 294 B.R. 137, 141 (10th Cir. BAP 2003) (noting that "[t]he Curtis factors have been widely adopted by bankruptcy courts").

---

[6] Additional *Curtis* factors which are not relevant to this case include: (1) whether the foreign proceeding involves the debtor as a fiduciary; (2) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (3) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit; (4) whether the judgment claim arising from the foreign action is subject to equitable subordination under § 510(c); (5) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f); and (6) whether the foreign proceedings had progressed to the point where the parties were prepared for trial. *See Curtis,* 40 B.R. at 799-800.

In weighing the relevant factors, the Court finds that cause exists to modify the automatic stay to permit Apfels to prosecute the Eviction Proceeding and exercise its state law rights and remedies under the Lease, other than obtaining or collecting a money judgment. Even if Ms. Blair has equity in the Lease, as she argues, the bankruptcy estate cannot realize any value from the Lease by assuming and assigning it. The Lease was rejected. Litigating the right of eviction in the State Court will not interfere with the bankruptcy case or prejudice creditors.[7] Further, this matter presents a landlord-tenant dispute governed by New Mexico law. The State Court is well-versed in landlord-tenant law and traditionally exercises jurisdiction over such disputes. Modifying the stay would result in a speedy and complete resolution of the issues - namely, whether Apfels are entitled to evict Ms. Blair from the Property. Finally, the "balance of the hurt" favors stay relief. Chapter 7 does not give Ms. Blair the right to continue to occupy leased premises if Apfels are entitled to terminate the Lease under applicable nonbankruptcy law. Ms. Blair will have the opportunity to present her defenses and any claims in the State Court.

## CONCLUSION

Based on the foregoing, the Court will modify the automatic stay to allow Apfels to pursue the Eviction Proceeding and exercise their rights and remedies under the Lease in the State Court. However, the stay will not be modified to permit Apfels to obtain a money judgment against Ms. Blair or otherwise to enforce any of her obligations under the Lease as her personal liability, absent an effective waiver on her part of the discharge of debt arising from the Lease. The Court declines to waive the 14-day period set forth in Fed.R.Bankr.P. 4001(a)(3)

---

[7] *See In re Brooks,* 389 B.R. 790, 794 (Bankr.M.D.Fla. 2008) (observing that a state court eviction proceeding was "only tangentially related to the [d]ebtor's Chapter 7 case"); *In re Watkins,* 2008 WL 708413, *4 (E.D.N.Y. 2008) ("It is well-established that the continuation of a pre-petition eviction proceeding usually will not interfere with the bankruptcy case."); *In re Touloumis*, 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994) (granting a landlord relief from the automatic stay because the eviction of the debtor-tenant will have no discernable impact on the bankruptcy case).

8

during which an order granting relief from the automatic stay is stayed.   The Court will enter an

order consistent with this memorandum opinion.

                                                ROBERT H. JACOBVITZ
                                                United States Bankruptcy Judge

Date entered on docket:  July 16, 2015

COPY TO:

Constance May Blair
410 Alamo Dr.
Santa Fe, NM 87501

Karl Hans Sommer
P.O. Box 2476
Santa Fe, NM 87504-2476